**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SAM FISHER, # N-53175, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-0301-NJR |
| | ) | |
| DR. LARSON, GARY GERST, | ) | |
| WEXFORD, DR. SCHICKER, and | ) | |
| DEBBIE ISAACS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Sam Fisher, an inmate at Big Muddy River Correctional Center ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff asserts that Defendants denied him adequate medical treatment for an ingrown toenail for nearly a year, which caused him significant pain and suffering.

This matter is now before the Court for a preliminary review of Plaintiff's amended complaint (Doc. 8) pursuant to 28 U.S.C. § 1915A. Plaintiff filed the amended pleading at the direction of the Court after his original complaint was dismissed without prejudice for failure to state a claim. (*See* Doc. 7). Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## Amended Complaint

In September 2013, Plaintiff began to suffer from an ingrown toenail on his right foot, which he states caused him tremendous pain and suffering. (Doc. 8, p. 7). He repeatedly sought medical attention, but claims he was not seen by a healthcare professional until mid-November 2013. *Id*. at 6-8. Plaintiff asserts that he notified Defendant Isaacs, a nurse and administrator in the health care unit at Big Muddy, about his toenail and the lack of response to his repeated requests to be seen, but that she failed to respond to his requests for help. *Id*. at 7. By the time Plaintiff was finally seen in the healthcare unit, Plaintiff claims that his toenail had become infected and was causing him such pain that he even had trouble walking over to dietary in order to eat. *Id*. The nurse on duty that day told him, "You are going to have to wait a long time before they fix this problem." *Id*. at 8. She gave Plaintiff a prescription for pain medication and ordered him to soak his foot twice a day. *Id*.

At an appointment in late-November, Plaintiff saw Defendant Gary Gerst, a physician's assistant at Big Muddy. Plaintiff asserts that Defendant Gerst refused to treat his ingrown nail, insisting the nail was "perfect," and directed Plaintiff to continue to soak his foot. *Id*. When Plaintiff inquired why he should continue to soak his foot if the toenail was "perfect," Defendant Gerst threatened, "Shut up, or I'll take you off the foot soaking too!" *Id*. at 10.

Plaintiff continued to soak his foot twice a daily, but his condition only worsened. *Id*. On one occasion while Plaintiff was soaking his foot, Defendant Gerst walked by. Plaintiff attempted to show Gerst how the toenail was getting worse, but Gerst just ignored him. *Id*. After Plaintiff filed a grievance regarding his worsening condition, he received a call pass to see Defendant Gerst again. *Id*. at 11. This time Gerst told him to quit his complaining and informed him that he wasn't going to get any treatment for his toe other than the foot soaking. Gerst then

threatened to have Plaintiff put in segregation if he continued to complain. *Id.*

Plaintiff claims that he continued to soak his foot twice a day for months, but his condition never improved. *Id.* at 11. He also was not prescribed any medication to treat the ongoing pain. *Id.* One day, during a blood pressure clinic, Plaintiff showed Defendant Dr. Larson how badly swollen and infected his toenail was. Larson responded, "You are not here for that, that is another issue." *Id.* Larson went on to say that he knew about Plaintiff's toenail and that he had ordered the foot soaking in the first place. *Id.* Larson then asked Plaintiff when he was scheduled to be released. When Plaintiff told him he was due to be released in December 2014, Larson told him that he could have the toenail taken care of once he was released. *Id.* at 12. Plaintiff explained that he was in a lot of pain and pleaded with Larson to help him. *Id.* Larson responded that Plaintiff was not there for that, and Plaintiff would need to speak with Gerst. *Id.*

Plaintiff claims that the foot soaking continued for months and that he would show his toenail to Defendants Gerst and Larson every chance he could, but that they both refused to order a different treatment. *Id.* Finally, a nurse intervened on Plaintiff's behalf and convinced Defendant Larson to remove Plaintiff's toenail. *Id.* at 13. The infected toenail was finally removed on August 28, 2014, nearly a year after Plaintiff initially sought treatment.

Plaintiff claims that Defendants Schicker, medical director for the Illinois Department of Corrections ("IDOC"), and Wexford, the private corporation that provides health care to Illinois inmates by contract with IDOC, maintain an unwritten policy designed to deny medical care to inmates who are close to being released. *Id.* at 8 and 14. Plaintiff insists that Defendants maintain this policy "in order to save IDOC a few dollars." *Id.* Plaintiff further asserts that Defendants Isaacs, Larson, and Gerst have been instrumental in the adoption and implementation of this unwritten policy. *Id.* at 9.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Plaintiff seeks to bring claims under the First, Fifth, Eighth and Fourteenth Amendments. But Plaintiff has failed to make any allegations to support a claim that his rights were violated under either the Fifth or Fourteenth Amendments. The Court finds, however, that Plaintiff has articulated a medical care claim under the Eighth Amendment (Count 1) and a retaliation claim (Count 2) under the First Amendment. Each of these counts is discussed below.

**Count 1: Denial of Adequate Medical Care**

To establish an Eighth Amendment medical needs claim, a plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). The amended complaint satisfies the objective prong of this test. The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The complaint alleges that Plaintiff had an ingrown toenail that caused him significant pain and discomfort over several months. Eventually, the toenail became so severely infected that it had to be removed. These allegations meet the threshold requirement for a

"serious" medical condition. The question, then, is whether Defendants Gerst, Larson, Schicker, Isaacs, and Wexford acted with deliberate indifference.

To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). But, to be held liable, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Unlike in the original complaint, Plaintiff has alleged in the amended complaint that he made Defendants Gerst, Larson, and Isaacs aware of his medical condition on multiple occasions and requested appropriate medical treatment, but that they refused to provide him with adequate medical care. Therefore, Plaintiff will be allowed to proceed with his Eighth Amendment deliberate indifference claim (Count 1) against Defendants Gerst, Larson, and Isaacs.

As for Defendants Wexford and Schicker, Plaintiff asserts that they should be held liable because they were responsible for an unwritten policy/practice designed to deny inmates nearing their release date appropriate medical care, and that this policy/practice caused the alleged violation of Plaintiff's constitutional right to adequate medical care. Plaintiff further alleges that this policy caused Defendants Gerst, Larson, and Isaacs to respond to Plaintiff's condition as they did. Defendants, like Wexford and Schicker, may be held liable for the promulgation of a policy or practice, if it causes the underlying constitutional violation. *Woodward v. Corr. Med.*

*Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). As such, Plaintiff may also proceed on his Eighth Amendment claim (Count 1) against Defendants Wexford and Schicker.

**Count 2: Retaliation Claim**

To state a retaliation claim, an inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

Here, Plaintiff claims that Defendant Gerst threatened on one occasion to withhold medical care and on another to have Plaintiff sent to segregation if he complained any more about the medical care he was receiving. Plaintiff states that he was so intimidated by Defendant Gerst's threats that he kept quiet. These allegations sufficiently state a claim of retaliation against Defendant Gerst. Plaintiff may proceed on this claim as well.

## Pending Motions

Plaintiff's motions for service of process at government expense (Docs. 4 and 11) are unnecessary and, therefore, are **DENIED as moot**. Likewise, with the issuance of this screening order, Plaintiff's motion for status report (Doc. 12) is unnecessary and also **DENIED as moot**.

In addition, Plaintiff has already been granted leave to proceed IFP. (*See* Doc. 6). Plaintiff's second motion for IFP is unnecessary and, therefore, **DENIED as moot**.

Plaintiff's motions for recruitment of counsel (Docs. 3 and 9) remain **PENDING** and shall be referred to United States Magistrate Judge Wilkinson for a decision.

<u>Disposition</u>

**IT IS HEREBY ORDERED** that Plaintiff may proceed on **COUNT 1** (medical care claim) against Defendants **SCHICKER, GERST, LARSON, ISAAC**, and **WEXFORD** and on **COUNT 2** (retaliation claim) against Defendant **GERST**.

The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Orange as a party to this case, according to the order (Doc. 7) that dismissed Defendant Orange without prejudice.

The Clerk of Court shall prepare for Defendants **SCHICKER, GERST, LARSON, ISAAC**, and **WEXFORD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 3 and 9).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 6, 2015**

<u>s/ NANCY J. ROSENSTENGEL</u>
**NANCY J. ROSENSTENGEL**
**United States District Judge**