IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SAM FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-301-NJR-DGW |
| | ) | |
| DENNIS LARSON, GARY GERST, | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| LOUIS SCHICKER, and DEBORAH | ) | |
| ISAACS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Partial Summary Judgment filed by Defendants Gary Gerst and Wexford Health Sources, Inc. on May 20, 2016 (Doc. 39) be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff Sam Fisher, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. §1983 alleging he was denied adequate medical care for an ingrown toenail for almost a year beginning in September 2013 and

ending when his toenail was removed on August 28, 2014 while he was incarcerated at Big Muddy Correctional Center ("Big Muddy") (Doc. 8).   Following the screening of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, he was allowed to proceed in this action on two claims (*see* Doc. 13).   Defendant medical providers Gary Gerst (a physician's assistant at Big Muddy), Debbie Isaacs (a nurse and administrator in Big Muddy's healthcare unit), Dr. Larson, Dr. Shicker (the IDOC medical director), as well as Wexford Health Sources, Inc. ("Wexford") are named in Count One alleging that these Defendants were deliberately indifferent to Plaintiff's serious medical condition and/or promulgated a policy or practice to deny Plaintiff adequate treatment for his condition.   Defendant Gerst is also named in Count Two of Plaintiff's complaint alleging that this Defendant retaliated against Plaintiff and threatened to withhold medical care and have Plaintiff sent to segregation if he complained about the medical care he was receiving.

Defendants Wexford and Gerst seek summary judgment on their affirmative defense of failure to exhaust administrative remedies as to the policy and practice claim contained in Count 1 against Defendant Wexford and the retaliation claim made in Count 2 against Defendant Gerst (*see* Doc. 39).[1]   Plaintiff responded on June 16, 2016 (Docs. 42 and 43).   A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on October 18, 2016.

## FINDINGS OF FACT

In his response brief, Plaintiff claims that he submitted grievances about retaliatory acts taken by Defendant Gerst and about Defendant Wexford's policy regarding the withholding of medical care for inmates who are soon to be released.   He further states that he did not receive responses to those grievances.   Specifically, Plaintiff states that he wrote a grievance about

---

[1] Defendants are not seeking summary judgment on the deliberate indifference claim against Gerst contained in Count 1.

Defendant Gerst's retaliatory conduct after a medical visit on November 21, 2013 (Doc. 42-1, p. 3). Thereafter, Plaintiff wrote "several" grievances about the policy/practice set forth in his complaint.

None of the grievances in the record, dated November 13, 2013, May 13, 2014, July 19, 2014, October 28, 2014, or August 19, 2015 mention Defendant Gerst, retaliation, Wexford, or the alleged policy related to denying care to an inmate when he will soon be released (although three of them do concern the medical care for his ingrown toenail). In a letter dated November 19, 2014, Plaintiff states that "since November of 2013, I have filed a total of six grievances regarding negligence on the part of Health Care staff . . ." (Doc. 40-3, p. 10; Doc. 8-1, p. 8). The letter does not mention Gerst or Wexford.

Based on the evidence in the record, Defendants argue that there is no grievance that exhausts Plaintiff's retaliation claim against Defendant Gerst or his policy and practice claim against Defendant Wexford. Moreover, Defendants urge the Court to reject Plaintiff's argument that he filed grievances regarding these claims that have gone missing. In support of this argument, Defendants point to various grievances and letters written by Plaintiff wherein he complains and follows-up about missing grievances. Defendants remark that such inquires relate only to grievances complaining about medical treatment for his ingrown toenail, specifically pointing to Plaintiff's grievances dated July 19, 2014 and October 28, 2014, and Plaintiff's November 19, 2014 letter directed to Warden Roeckman. Defendants argue that because the evidence in the record shows that Plaintiff follows-up when grievances go missing and there is no "follow-up" correspondence concerning missing grievances related to Gerst's alleged retaliation or the Wexford policy at issue in this lawsuit, Plaintiff did not attempt to file any such grievances.

In opposition to Defendants' motion, Plaintiff argues that he submitted "several grievances" regarding the claim of retaliation by Defendant Gerst and the policy and practice claim against Wexford, but, these grievances "came up missing" and he never received a response from the administration at Big Muddy.   Plaintiff asserts that the Illinois Administrative Code does not provide instruction on how to proceed in the administrative review process under such circumstances and, as such, asks the Court to find that he exhausted his administrative remedies.

### Pavey Hearing

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on October 20, 2016.   At the hearing, Plaintiff explained that he filed a grievance regarding Wexford's alleged policy of denying treatment to inmates who are going to be paroled soon, but he could not remember precisely when he filed said grievance.   Plaintiff, however, noted that he never received a response to this grievance after he put it in a lockbox at his institution.   Plaintiff also indicated that he filed a grievance regarding an argument with Defendant Gerst wherein this Defendant threatened to send Plaintiff to segregation and did not treat Plaintiff.   Plaintiff recalled that this grievance was written on the same day of the alleged incident, sometime in 2014.   According to Plaintiff, the grievance regarding the Wexford policy was written around the same time.   Plaintiff also indicated that he cannot write and, as such, he received assistance in writing the grievances.   Plaintiff also explained that he did not read these grievances as he did not have glasses at the time, so was not sure of what, exactly, they said.

LEGAL STANDARDS

### Summary Judgment Standard

Summary judgment is proper only if the moving party can demonstrate "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

***Exhaustion Requirements under the PLRA***

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr*., 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a

precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).  The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit.  See *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Id*. at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance.  *Id*. § 504.810(b).  The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance.  *Id*. § 504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed.  *Id*. § 504.830(d).  An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision.  *Id*. §

504.850(a).  *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).  An inmate's administrative remedies are not exhausted until the appeal is ruled on by the ARB.  *See Id*.  The ARB shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  *Id*. § 504.850(f).

An inmate may request a grievance be handled as an emergency by forwarding it directly to the CAO.  If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.  *Id*. § 504.840.  If, after receiving a response from the CAO, an offender feels the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision.  *Id*. § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).  The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances.  *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).  The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue."  *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009).  If further remedies are unavailable to the prisoner, he is deemed to have exhausted.  *Id*.  Prisoners are required only to provide notice to "responsible persons" about the complained of conditions.  *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).  An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance.  *See Kaba*, 458 F.3d at 684.

### CONCLUSIONS OF LAW

Based on the briefs of the parties, as well as the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff exhausted his administrative remedies as to his claim of retaliation against Defendant Gerst and his policy and practice claim against Defendant Wexford.

The issue here is whether the Court finds Plaintiff credible in his assertion that he attempted to file grievances complaining about the circumstances that form the basis for his claim against Wexford and his retaliation claim against Defendant Gerst, but was thwarted in his efforts to exhaust these grievances because he never received a response at the institutional level. Defendants point to various documents in the record evidencing Plaintiff's diligence in inquiring about missing grievances by way of filing additional grievances or letters, as support for their argument that because the record is bereft of any such follow-up regarding grievances related to his retaliation and policy and practice claim, the Court should find Plaintiff's assertion disingenuous. Defendants' argument is unconvincing.

First, although Plaintiff made inquiries regarding missing grievances related to his medical treatment for his ingrown toenail, such circumstance does not indicate, or require, that he would make an inquiry every time he did not receive a response to a grievance. The Court is unwilling to make such a conclusion about Plaintiff's behavior based on the rather limited evidence before it. Moreover, the Court does not believe that Plaintiff should be punished for failing to inquire and submit "follow up" grievances when previous grievances are not responded to, as there is no requirement in the Illinois Administrative Code to do so. Finally, the Court is not convinced that Plaintiff's missing grievances failed to address his retaliation claim against Defendant Gerst or his policy and practice claim against Wexford. While the Court notes that

Plaintiff's inquiries regarding his missing grievances indicated that these missing grievances were "in regard to a [*sic*] ingrown toenail" (Doc. 40-1, p. 11) or related to "negligence on the part of health care staff" (Doc. 40-3, p. 10), said references could have included complaints about Gerst and/or Wexford as his complaints against these Defendants related, in at least some respect, to his medical treatment (or lack thereof) for his ingrown toenail.

Moreover, the Court finds Plaintiff's assertions regarding his missing grievances credible as a review of the documents provided by the ARB and Big Muddy indicates discrepancies with Big Muddy's record-keeping.  In particular, the Court notes that Plaintiff's November 13, 2013 grievance, which received a response from the counselor and warden at Big Muddy, is only included in the ARB's records, not in the Big Muddy records.

For these reasons, the Court finds that Plaintiff filed grievances setting forth his complaints that are the basis for his retaliation claim against Defendant Gerst and his policy and practice claim against Defendant Wexford, but was thwarted in his attempts to exhaust said grievances, thus making his administrative remedies "unavailable".  *See Lewis*, 300 F.3d at 833.

### RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Partial Summary Judgment filed by Defendants Gary Gerst and Wexford Health Sources, Inc. on May 20, 2016 (Doc. 39) be **DENIED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380

F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 15, 2017**

**DONALD G. WILKERSON**
**United States Magistrate Judge**