IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAM FISHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:15-cv-301-NJR-DGW |
| DENNIS LARSON, GARY GERST, WEXFORD HEALTH SERVICES, LOUIS SHICKER, and DEBORAH ISAACS, | ) ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are two Motions for Summary Judgment, one filed by Defendants Deborah Isaacs and Louis Shicker (Doc. 64) and the other filed by Defendants Dennis Larson, Gary Gerst, and Wexford Health Services (Doc. 69). For the reasons set forth below, the Court grants both motions.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Samuel Fisher, an inmate at Big Muddy Correctional Center, filed this action alleging he was repeatedly denied medical attention for an ingrown toenail (Doc. 8, pp. 6-8). By the time Fisher was finally seen in the healthcare unit, he claims his toenail had become infected and was causing him such pain that he had trouble walking over to dietary in order to eat (Doc. 8, p. 7).

In his Complaint, Fisher alleged he saw Defendant Gary Gerst, a physician's assistant at Big Muddy, multiple times starting in November 2013. The medical records, however, indicate Fisher was not seen for an ingrown toenail until his January 31, 2014 appointment.

Fisher also admitted in his deposition that he may not have gotten treatment for his toe until he saw Gerst at the January 2014 appointment (Doc. 70-4, p. 17, 65:4-19). Fisher asserts that Defendant Gerst refused to treat his ingrown nail, insisting the nail was "perfect," and directed Fisher to continue to soak his foot (Doc. 8, p. 8). When Fisher inquired why he should continue to soak his foot if the toenail was "perfect," Fisher states Defendant Gerst threatened, "Shut up, or I'll take you off the foot soaking too!" (Doc. 8, p. 10). On one occasion while he was soaking his foot, Fisher states Gerst walked by and he attempted to show Gerst how the toenail was getting worse, but Gerst just ignored him (Doc. 8, p. 10).

Fisher alleges that after filing a grievance regarding his worsening condition, he received a call pass to see Defendant Gerst again, who told Fisher he would put him in segregation if he continued to complain (Doc. 8, p. 11). In deposition, however, Fisher testified he could not recall whether a second appointment with Gerst even occurred (Doc. 70-4, p. 17, 65:4-6).

Fisher further alleges he showed Defendant Dr. Larson how badly swollen and infected his toenail was during a blood pressure clinic, but Dr. Larson responded, "You are not here for that, that is another issue" (Doc. 8, p. 11). Dr. Larson then allegedly asked Fisher when he was scheduled to be released. When Fisher told him he was due to be released in December 2014, Larson told him that he could have the toenail taken care of once he was released (Doc. 8, p. 12). Again, however, Fisher testified in his deposition that he did not remember seeing Dr. Larson prior to August 13, 2014, when Dr. Larson examined his toe and scheduled a toenail removal (Doc. 70-4, pp. 17-18, 67:5-9; 70:13-17).

Fisher's complaint also claims that Defendants Shicker, medical director for the Illinois Department of Corrections ("IDOC"), and Wexford, the private corporation that

provides health care to Illinois inmates by contract with IDOC, maintain an unwritten policy designed to deny medical care to inmates who are close to being released (Doc. 8, pp. 8, 14). In his deposition, however, Fisher admitted he had never seen any such written policy and that the only basis he had for believing such a policy exists is the statements of four or five other inmates, whose names he cannot recall and who may not have been truthful (Doc. 70-4, pp. 21-22, 84:25-87:22)

Finally, Fisher's complaint asserts he notified Defendant Isaacs, the administrator of the health care unit at Big Muddy, about the lack of response to his repeated requests to be seen about his toenail, but that she failed to respond to his requests for help (Doc. 8, p. 7). Fisher admitted in his deposition that he never met with Isaacs face-to-face and could not be sure that she was aware of his complaints (Doc. 65-1, p. 25, 98:16-18).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

While the burden is on the moving party to show entitlement to summary judgment, Federal Rule of Civil Procedure 56(c)-(e), requires the non-moving party to properly address another party's assertion of fact. If a party fails to address any such assertion, the Court may consider the facts undisputed and can grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is so entitled. FED. R. CIV. P. 56(e)(2)-(3).

Here, copies of both Motions for Summary Judgment were sent to Fisher at the address on file with the Court (Doc. 64, p. 3; Doc. 69, p. 4). Included with each motion was a Federal Rule of Civil Procedure 56 Notice of Motion (Docs. 66, 71), which contains a warning that failure to respond to the motion or address facts asserted in the motion could result in the Court considering those facts undisputed, and may form the basis for granting summary judgment. Fisher did not file a response to either of the pending motions. Thus, the Court finds the facts asserted in the motions for summary judgment undisputed.

## DISCUSSION

Following the screening of Fisher's complaint pursuant to 28 U.S.C. § 1915A, he was allowed to proceed in this action on two claims (*see* Doc. 13). The first alleges that Gerst, Isaacs, Dr. Larson, Dr. Shicker, and Wexford were deliberately indifferent to his serious medical condition and/or promulgated a policy or practice to deny him adequate treatment for his condition (Doc. 13). The second count alleges Defendant Gerst retaliated against Fisher by threatening to withhold medical care and have Fisher sent to segregation if he complained about the medical care he was receiving (Doc. 13). Defendants now argue they are entitled to summary judgment on both counts.

I.  **Deliberate Indifference**

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, however, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish that the individual prison officials were deliberately indifferent to that condition. *Id.*

With respect to the first requirement, minor aches and pain do not constitute a serious medical need, but "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" constitute a serious medical need. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). In their Motions for Summary Judgment, Defendants do not address this first element, thus the Court considers the issue conceded. The question before the Court, therefore, is whether Defendants Gerst, Larson, and Isaacs were deliberately indifferent to that medical need.

Proving deliberate indifference is difficult because prison medical professionals are entitled to deference unless no minimally competent professional would have responded similarly under the same circumstances. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Accordingly, a plaintiff must show more than simple medical malpractice. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish deliberate indifference. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor was actually exercising his professional judgment. *Pyles*, 771 F.3d at 409.

### A. Defendant Gerst

Here, Fisher alleges Defendant Gerst was deliberately indifferent to his medical needs on multiple occasions because he refused to refer him for a toenail removal procedure. The Court notes, however, that the undisputed facts indicate Fisher was seen by Defendant Gerst on only one occasion (Doc. 70, p. 2). On that occasion, Defendant Gerst examined Fisher's toe and noted in the record that it was not inflamed or tender and did not have any discharge (Doc. 70, p. 2). Defendant Gerst determined the nail was not ingrown, but rather cut too short and appeared to have been picked at (Doc. 70, p. 2). Fisher was told to avoid picking his toenails and instructed to return to sick call if needed, which he apparently did not do until seven months later (Doc. 70, p. 3).

There is no evidence before the Court to indicate that Defendant Gerst's treatment of Fisher's symptoms qualifies as deliberate indifference. Fisher has presented no evidence to suggest Gerst's refusal to removal a toenail that was not inflamed or tender and that was not producing a discharge was a departure from accepted professional standards, let alone one so significant it calls into question whether Gerst was actually exercising his professional judgment. *Pyles*, 771 F.3d at 409. Rather, it appears Fisher simply disagreed with Gerst's

course of treatment, which is insufficient to support a claim of deliberate indifference to serious medical need. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Because there is no evidence upon which a jury could find Gerst's medical decisions were deliberately indifferent, Fisher's claims against Gerst are **DISMISSED with prejudice.**

### B. Dr. Larson

Fisher alleged in his Complaint that Dr. Larson was deliberately indifferent to his medical needs because he refused to schedule a toenail removal, resulting in a delay of necessary medical treatment (Doc. 8, p. 12). The uncontested evidence, however, indicates Dr. Larson first saw Fisher on August 13, 2014 (Doc. 70, p. 5). At that visit, Dr. Larson noted Fisher's toenail appeared abnormal, determined removal of the toenail was medically appropriate, and scheduled Fisher for a toenail removal at his next appointment (Doc. 70, p. 4). On August 28, 2014, Dr. Larson performed the procedure, applied Bacitracin ointment, and prescribed Tylenol for pain (Doc. 70, p. 4).

It appears, therefore, that Dr. Larson treated Fisher in the manner he requested, just not as quickly as Fisher would have liked. While Fisher was made to wait two weeks for the procedure, there is no evidence in the record to suggest that such a delay was so significant a departure from accepted professional standards that it calls into question whether Dr. Larson was actually exercising his professional judgment. *Pyles*, 771 F.3d at 409. Rather, Dr. Larson made a medical assessment that removal of the toenail could wait until a later date. Fisher disagreed with that assessment. Ultimately, this is a disagreement about the proper course of treatment, which Courts consistently find insufficient to prove deliberate indifference. *Greeno,* 414 F.3d at 653. Because there is no evidence upon which a jury could

find Dr. Larson's medical decisions were deliberately indifferent, Fisher's claims against Dr. Larson are **DISMISSED with prejudice.**

### C. Deborah Isaacs

Fisher asserts Defendant Isaacs was deliberately indifferent to a serious medical need because, as the administrator of the health care unit at Big Muddy, she was responsible for the lack of response to his repeated requests for treatment (Doc. 8, p. 7).

In order to be deliberately indifferent to a serious medical need, officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, Fisher admitted in his deposition that he never had any face-to-face interaction with Isaacs, and he was not sure whether she received his request slips (Doc. 65-1, p. 25, 98:10-100:5). Fisher could not even recall how many sick call request slips he submitted or when he submitted them. The only contact between Defendant Isaacs and Fisher was a letter she sent to him in response to a grievance he submitted on July 19, 2014. In that letter, Isaacs stated she had reviewed his medical file and that Fisher had not requested to be seen regarding his toenail during the prior six months (*see* Doc. 65-2, pp. 3-4).

Thus, there is no evidence upon which a jury could find Isaacs had any subjective knowledge that a serious medical condition existed, let alone that she disregarded it. *Farmer*, 511 U.S. at 837. Accordingly, Fisher's claims against Defendant Isaacs are **DISMISSED with prejudice.**

## II. Policy or Practice Claim

As to Defendants Wexford and Shicker, Fisher asserts they should be held liable because they were responsible for an unwritten policy or practice designed to deny inmates nearing their release date appropriate medical care (Doc. 15, p. 5). Defendants may be held liable for the promulgation of a policy or practice if it causes an underlying constitutional violation. *Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). A plaintiff must present evidence of such a policy or practice[1] at the summary judgment stage, however, and he or she has the burden of showing that policy or custom was the moving force behind the alleged constitutional violation. *Grieveson v. Anderson,* 538 F.3d 763, 771 (7th Cir. 2008). When alleging a policy exists as evidenced by a widespread practice, the Seventh Circuit has been clear that evidence of isolated acts is insufficient; rather, the plaintiff must present evidence of a series of violations. *Palmer v. Marion County,* 327 F.3d 588, 596 (7th Cir. 2003).

Here, there is no evidence upon which a jury could find the existence of a policy delaying treatment when inmates are close to their release date. Fisher's only evidence of such a policy is his testimony in deposition that he was told by five or six other inmates about such a policy (Doc. 65-1, p. 21, 83:25-87:22). Fisher admitted he has never seen any such policy in writing, he could not recall which inmates told him about the alleged policy, and he was not even sure if those inmates were telling the truth (Doc. 65-1, p. 21, 83:25-87:22). Further, Fisher's own case cannot be evidence of such a policy, because he was ultimately treated prior to being released.

---

[1] There are three possible forms of unconstitutional policies or practices: (1) an express policy; (2) a widespread practice that constitutes a custom or usage even if informal in nature; and (3) an allegation that the injury was caused by a person with final policy making authority. *Palmer v. Marion County,* 327 F.3d 588, 594-95 (7th Cir. 2003). Here, the only policy or practice at issue is that relating to a custom or usage.

Thus, there is no evidence before the Court upon which a jury could find a widespread practice by either Defendant Shicker or Defendant Wexford of denying treatment to patients due to their release date. Fisher's claims against Shicker and Wexford are therefore **DISMISSED with prejudice.**

## III. Retaliation

Fisher finally alleges Defendant Gerst retaliated against him by threatening to withhold medical care or send him to segregation if he continued to complain about his medical care (Doc. 13, p. 2-3).

To prevail on a First Amendment retaliation claim, a plaintiff must ultimately show they (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridgens v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)).

There is nothing before the Court that demonstrates Fisher suffered any deprivation at all at the hands of Defendants, let alone "deprivation that would likely deter First Amendment activity in the future." As discussed above, the undisputed facts indicate Fisher was seen by Defendant Gerst on only one occasion—January 31, 2014 (Doc. 70, p. 2). Gerst could not have denied Fisher treatment at a later date, because he did not see him at a later date. Further, there is no evidence in the medical records that Fisher made any requests to be seen for his toenail between his appointment with Gerst and his appointment with Dr. Larson, who then scheduled the toenail removal (*See* Doc. 65-2, pp. 3-4). Thus, there is no evidence that Fisher was in fact retaliated against, let alone because of any grievances he

filed regarding his medical treatment. The retaliation claim against Defendant Gerst is therefore **DISMISSED with prejudice.**

## Conclusion

For these reasons, the Motion for Summary Judgment filed by Defendants Isaacs and Shicker (Doc. 64), and the Motion for Summary Judgment filed by Defendants Larson, Gerst, and Wexford (Doc. 69) are both **GRANTED**. This entire action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## NOTICE

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the

deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a

motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:   January 25, 2018**

s/ Nancy J. Rosenstengel\_\_\_\_\_
**NANCY J. ROSENSTENGEL
United States District Judge**